FILED
2023 Feb-22 AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ERNEST MITCHELL, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:22-cv-01381-RDP** |
| | } | |
| **DAVID SEYMOUR, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Defendants' Motions to Dismiss all Claims or, in the Alternative, to Compel Arbitration and Stay the Lawsuit. (Docs. # 4; 17). For the reasons discussed below, the Motions are due to be granted in part. Because Plaintiffs' claims are subject to a valid and enforceable arbitration agreement, Defendants' request to compel arbitration is due to be granted, and this case is due to be dismissed without prejudice.

## I. Background

Ernest and Darius Mitchell ("Plaintiffs") are African-American men who claim that they experienced racial discrimination and harassment while members at a Crunch Fitness facility in Hoover, Alabama. (Doc. # 1-1). According to Plaintiffs, this discrimination consisted of "dirty looks, stalking, and intentional interference with their workouts, and culminat[ed] with the staff's ratification of and joining in with a white customer's direct harassment of Plaintiffs." (*Id.* ¶ 47).

Plaintiffs' claims arise out of Membership Agreements that they both signed when they joined Premier Fitness, LLC, d/b/a Crunch Hoover,[1] in the spring of 2020. (*Id.* ¶ 12); (Doc. # 4-1). First, Plaintiffs contend that Defendants breached the Membership Agreements by failing to provide a safe space that was free from harassment and discrimination. (Doc. # 1-1 ¶¶ 38-40). Additionally, they allege racial discrimination and retaliation in violation of 42 U.S.C. § 1981, arguing that they were deprived of "their rights under contract as customers of Crunch Fitness." (*Id.* ¶¶ 41-48).

Both of the Membership Agreements that Plaintiffs signed contained the following arbitration clause:

> **ARBITRATION.** Member agrees that any dispute, controversy, or claim arising out of or relating in any way to the Membership Agreement, including without limitation any dispute concerning the construction, validity, interpretation, enforceability, or breach of this Membership Agreement, or any dispute concerning communications that the Member receives following termination of this agreement, shall be exclusively resolved by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules. The place of the arbitration shall be Brownsville and Texas law shall apply. In the event of a claim arising out of or relating in any way to the Membership Agreement, the complaining party shall notify the other party in writing thereof through a demand for arbitration which shall be made within a reasonable time after the claim has arisen, and in no event shall it be made after two years from when the aggrieved party knew or should have known of the claim. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. This arbitration clause shall also apply to any dispute, controversy, or claim between the member and any third party with whom the Club contracts in order to perform its obligations or exercise its rights under this Membership Agreement, including without limitations, its third party payment processor, which is currently ABC Financial Services, LLC.

[1] Plaintiffs bring this action against three Defendants: (1) Crunch Franchising, LLC, (2) David Seymour, and (3) Wayne Borries. (Doc. # 1-1 ¶¶ 3-5). Seymour and Borries are both part-owners of the Crunch Fitness facility at which the alleged discrimination occurred. (*Id.*). However, Plaintiffs concede that Crunch Franchising, LLC is not a proper Defendant because it was not a party to the relevant Membership Agreements. (Doc. # 9 at 1). In their Response to the first Motion to Dismiss, Plaintiffs request leave to amend their Complaint to substitute Premier Fitness, LLC in place of Crunch Franchising, LLC. (*Id.*). The court will not permit Plaintiffs to amend their Complaint for two reasons. First, Plaintiffs may not move to amend their Complaint through a response to a motion to dismiss. *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009). Furthermore, even if Plaintiffs' request to amend was properly raised, it would be futile because Plaintiffs' claims are due to be dismissed, and adding Premier Fitness as a Defendant would not change that.

> MEMBER UNDERSTANDS AND AGREES THAT THE MEMBER AND THE CLUB ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT. NEITHER THE MEMBER NOR THE CLUB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.

(Doc. # 4-1 at 12, 22).

On November 4, 2022, Defendant Crunch Franchising, LLC filed a Motion to Dismiss All Claims or, in the Alternative, to Compel Arbitration and Stay the Lawsuit, arguing that Plaintiffs' claims are subject to a valid and binding arbitration agreement. (Doc. # 4). Defendant Wayne Borries joined the Motion on February 13, 2023. (Doc. # 17).

## II. Standard of Review

An order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate." *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Sterns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). Therefore, courts apply a "summary-judgment-like" standard to motions to compel arbitration. *Id.* Accordingly, the movant must establish "that there is no genuine dispute as to any material fact" on the question of whether the parties agreed to arbitrate. Fed. R. Civ. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute of material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). If the movant establishes that there is a valid and enforceable arbitration agreement governing the parties'

dispute, the court must compel arbitration and either dismiss or stay the action pending arbitration. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

**III. Analysis**

The Federal Arbitration Act ("FAA") governs the validity of arbitration agreements. Under the FAA, a written arbitration provision in a contract involving a transaction in interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

When deciding a motion to compel arbitration under the FAA, the court employs a two-step inquiry. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, it determines whether the parties agreed to arbitrate the dispute. *Id.* This requires the court to consider whether there is a valid arbitration agreement and, if so, whether the dispute falls within the scope of that agreement. *Lambert*, 544 F.3d at 1195. This is a matter of contract interpretation that is governed by state law. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).[2]

At the second step of the inquiry, the court decides whether any "legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The Supreme Court has recognized that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

[2] The parties agree that Alabama law applies to this inquiry.

If, after completing the two-step analysis, the court determines that a valid and enforceable arbitration agreement applies to the plaintiff's claims, the court must grant the motion to compel arbitration. *John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003).

**A. The parties agreed to arbitrate this dispute when they signed Membership Agreements containing arbitration provisions.**

Under Alabama law, the elements of a valid contract are: offer, acceptance, consideration, and mutual assent. *S. Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala. 2000). "A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 380 (Ala. 2006).

Plaintiffs admit that they each signed a Membership Agreement in exchange for the right to exercise at the Crunch Fitness facility in Hoover, Alabama. (Doc. # 1-1 ¶¶ 10-12). They also agree that their respective Membership Agreements each include the same arbitration clause, which provides:

> Member agrees that any dispute, controversy, or claim arising out of or relating in any way to the Membership Agreement, including without limitation any dispute concerning the construction, validity, interpretation, enforceability, or breach of this Membership agreement, or any dispute concerning communications that the Member receives following termination of this agreement, shall be exclusively resolved by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration rules.

(Doc. # 4-1 at 12, 22). Thus, by signing the Membership Agreements, Plaintiffs manifested their assent to abide by the arbitration provision.

Additionally, the court easily concludes that the parties' dispute falls within the scope of the arbitration clause because all of Plaintiffs' claims in this case arise out of the Membership Agreements. (Doc. # 1-1). Plaintiffs' breach of contract claims are based on alleged violations of the Membership Agreements and thus clearly stem from those agreements. (*Id.* ¶¶ 38-40).

Plaintiffs' § 1981 claims challenge the alleged deprivation of Plaintiffs' "rights under contract as customers of Crunch Fitness" and thus also arise out of, or are at least related to, the Membership Agreements. (*Id.* ¶¶ 41-48). Therefore, the court finds that there is a valid arbitration agreement that encompasses the parties' entire dispute.

**B. The arbitration agreements are enforceable.**

Plaintiffs do not contest that they agreed to arbitration. Rather, Plaintiffs claim that the arbitration agreements are unenforceable because they are unconscionable adhesion contracts. (Doc. # 9 at 3-7). This argument misses the mark.

"[T]here is nothing inherently unfair or oppressive about arbitration clauses." *Coleman v. Prudential Bache Secs., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986); *see Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1086 (Ala. 2005). Rather, "unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess v. Check Express*, 294 F.3d 1298, 1306-07 (11th Cir. 2002) (citing *Green Tree Fin. Corp. of Ala. v. Wampler*, 749 So. 2d 409, 417 (Ala. 1999)). The Alabama Supreme Court has defined an unconscionable contract as one "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Rigas*, 923 So. 2d at 1086 (quotations and citations omitted).

"To avoid an arbitration provision on the ground of unconscionability, the party objecting to arbitration must show both procedural and substantive unconscionability." *Id.* at 1087. Substantive unconscionability "relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party." *Id.* at 1086 (quotations and citations omitted). "Procedural unconscionability, on the other hand, deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over

contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." *Id.* at 1087 (quotations and citations omitted). The Alabama Supreme Court has identified several factors that courts should consider when deciding whether a contract is unconscionable:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

*Layne v. Garner*, 612 So. 2d 404, 408 (Ala. 1992). When making this determination, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25.

Here, Plaintiffs have fallen far short of their burden to prove that the arbitration agreements are unconscionable. First, Plaintiffs argue that the arbitration provision is unenforceable because "[w]hen Darius signed [the Membership Agreement], he was 'helped' through the process by a manager, who moved at such a fast pace that Darius was rushed through the contract and felt unable to read and comprehend all of it fully." (Doc. # 9 at 7). "However, when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby." *First Fam. Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999). Therefore, Plaintiffs cannot avoid the arbitration agreement simply by claiming not to have read or understood it. *See id.*; *Advance Tank & Constr. Co. v. Gulf Coast Asphalt Co.*, 968 So. 2d 520, 528 (Ala. 2006) ("A party to a contract is responsible for reading the contract."); *Coleman*, 802 F.2d at 1352 ("[A]bsent a showing of fraud or mental incompetence, a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed.").

Next, Plaintiffs contend that "[t]he arbitration clause is boilerplate, sitting inconspicuously in the middle of other long paragraphs of legalese." (Doc. # 9 at 7). As a threshold matter, Plaintiffs cite no authority stating than an arbitration provision must be "conspicuous" to be enforceable. Indeed, the Alabama Supreme Court "has generally recognized that there is no duty to expressly disclose the existence of an arbitration provision." *Advance Tank*, 968 So. 2d at 528. Moreover, "[t]o the extent that Alabama law requires that an arbitration agreement be conspicuous or disclosed in a particular way, it is preempted by the FAA." *Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1312 (M.D. Ala. 2004); *see Doctor's*, 517 U.S. at 687 (explaining that the FAA does not allow courts to invalidate arbitration agreements under state laws applicable only to arbitration agreements); *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) ("What States may not do is decide that a contract is fair enough to enforce all its basic terms . . . but not fair enough to enforce its arbitration clause.").

Furthermore, an arbitration provision is not unconscionable simply because it is part of a longer legal document. The court has reviewed the Membership Agreements at issue and finds that, contrary to Plaintiffs' claims, the arbitration provisions are, in fact, conspicuous.[3] In each Agreement, the arbitration provision is set forth in the same font and print size as the rest of the contract terms and is located in the body of the seven-page contract. (Doc. # 4-1 at 5-23). The section containing the arbitration clause is captioned "**ARBITRATION**." (*Id.* at 12, 22). And, the clause includes this warning: "MEMBER UNDERSTANDS AND AGREES THAT THE MEMBER AND THE CLUB ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL

[3] Or, at the very least, they are certainly not inconspicuous.

BEFORE A JUDGE IN A PUBLIC COURT." (*Id.*).[4] Therefore, there is no basis for concluding that the arbitration provisions are unconscionable. *See Ex parte Alaska Bush Adventures, LLC*, 168 So. 3d 1195, 1199 (Ala. 2014) (refusing to invalidate an arbitration clause as inconspicuous when the clause was in the same font and print size as the rest of the contract terms); *S. Energy Homes, Inc. v. Ard*, 772 So. 2d 1131, 1135 (Ala. 2000) (rejecting the argument that an arbitration agreement was inconspicuous because it was "just as conspicuous as the other provisions of the [contract]"); *cf. In re Checking Acct. Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1279-80 (11th Cir. 2012) (finding that, under South Carolina law, an arbitration provision was conspicuous because it appeared "prominently on the first page of the [contract], [was] clearly labeled 'arbitration agreement,' and portions of the provision [were] printed in bold, capital letters, and in larger font than the surrounding text").

Finally, Plaintiffs argue that the arbitration agreement is unenforceable because they had "no opportunity to negotiate or remove the arbitration clause." (Doc. # 9 at 7). Under Alabama law, "a primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability to obtain the product made the basis of the action without signing an arbitration clause." *Rigas*, 923 So. 2d at 1087 (citation and internal punctuation omitted). "The burden of demonstrating that the product cannot be obtained without signing an arbitration agreement is on the party asserting unconscionability." *Id.*

Here, Plaintiffs have not met that burden because they have not presented any evidence indicating that they lacked a meaningful choice as to whether to enter into the Membership Agreements or that they lacked a meaningful choice as to the terms of the contract. *See id.* at 1088.

---

[4] To be sure, this fully-capitalized disclaimer undermines Plaintiffs' argument that, "[a]s the weaker party, Plaintiffs could not be reasonably expected to know that this arbitration clause, if enforced, removes virtually [all] of their right of access to the courts." (Doc. # 9 at 7).

Plaintiffs claim that there was no opportunity to negotiate or remove the arbitration clause, but they have not submitted any evidence that they actually attempted to negotiate, nor have they shown that they tried to find a gym with a membership agreement that had no arbitration clause. "Thus, it is difficult to conclude that [Plaintiffs] lacked a meaningful choice—and that this lack of choice could render the arbitration provision unconscionable—when in fact they never undertook to actually make a choice." *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 647 (Ala. 2004); *see Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 752 (Ala. 2000) (refusing to find an arbitration agreement unconscionable when the plaintiff "did not shop around for a loan that did not involve an agreement to arbitrate"); *Powell v. AT&T Mobility, LLC*, 742 F. Supp. 2d 1285, 1290 (N.D. Ala. 2010) (Coogler, J.) (declining to invalidate an arbitration agreement because the plaintiff did not actually try to negotiate the terms of the agreement or attempt to find a similar agreement without an arbitration clause).

In conclusion, Plaintiffs' sparse factual assertions simply are not the "substantial evidence" that is required to show that an otherwise valid contract is unconscionable. *See Bess*, 294 F.3d at 1306-07; *Green Tree*, 749 So. 2d at 417. Therefore, the arbitration provision is enforceable.

## IV. Conclusion

For the reasons explained above, the court finds that the parties agreed to a valid and enforceable arbitration agreement that applies to all of Plaintiffs' claims. Therefore, Defendants' Motions to Dismiss all Claims or, in the Alternative, to Compel Arbitration and Stay the Lawsuit (Docs. # 4; 17) are due to be granted in part. This case is due to be dismissed without prejudice to the right of any party to reopen it without the payment of a filing fee to enforce any arbitration award in this matter. A separate order in accordance with this Memorandum Opinion will be entered separately.

**DONE** and **ORDERED** this February 22, 2023.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE